ANDREWS, Respondent, vs. UNITED STATES CASUALTY COM-
PANY, Appellant.

*January 14—February 9, 1915.*

*Accident insurance: Cause of death: Suicide: Evidence: Competency:
Credibility of witness: Arguments to jury: Harmless error: New
trial: Newly discovered evidence.*

1. In an action upon an accident policy, the main question being
whether the assured, who died from a bullet wound, intention-
ally shot himself (thus avoiding the policy) or was shot by his
mistress, and she having been charged with murder, so that it
was to her interest as well as that of the insurance company
that she should testify that the assured shot himself and should
also testify to any and all facts which would point that way, evi-
dence that there had been consultations between her or her at-
torney and the insurance company's claim agent prior to her
testifying in the action on the policy, was competent on behalf
of plaintiff as bearing on the credibility of the woman's testi-
mony.

2. Remarks of plaintiff's counsel in his argument to the jury, in
which he commented upon the supposed intimate relations be-
tween defendant's claim agent and the woman's attorney in the
criminal action, while containing personal abuse which cannot
be approved, are *held* not to have been prejudicial.

3. A motion for a new trial on the ground of newly discovered evi-
dence that the assured had a rupture, contrary to a warranty in
his application for the policy—such fact to be proved by the tes-
timony of his mistress,—is *held* to have been properly denied,
both because defendant had not used diligence to discover such
evidence or defense and because, two juries having rejected the
testimony of the woman as unworthy of belief, there was little
likelihood that her testimony would make any change in the re-
sult on another trial.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

Action upon a policy of accident insurance upon the life
of one William T. Ebeling, who died from the effects of a
bullet wound. There were two grounds of defense urged,
viz.: that the assured intentionally shot himself, and that he

was of "intemperate habit," contrary to a representation made by the assured in the application on which the policy was based. The action was here upon appeal from a previous judgment in plaintiff's favor and was reversed and sent back for a new trial on account of detail errors. 154 Wis. 82, 142 N. W. 487.

Upon the present trial the jury returned a special verdict to the effect (1) that the injury which caused the death was inflicted by Cora Edwards, and (2) that Ebeling at the time of making the application was free from intemperate habits.

A motion for new trial was made for errors committed on the trial and on account of newly discovered evidence, but the motion was denied and judgment rendered for the plaintiff for the amount of the policy and costs, from which the de-. fendant appeals.

For the appellant there was a brief by *Jeffris, Mouat, Oestreich & Avery,* and oral argument by *O. A. Oestreich.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.*

WINSLOW, C. J. No claim is made that the evidence is insufficient to sustain the verdict. The substantial errors claimed are but two in number, and will be briefly considered.

1. The great question in the case was whether Ebeling shot himself or whether his mistress, Cora Edwards, shot him, it appearing that the fatal shot was fired when the two were in a room together with no one else present. The deposition of Cora Edwards was taken and offered in evidence by the defendant and was to the effect that he shot himself. On the other side there was considerable evidence of statements made by both Ebeling and the woman immediately after the shooting, and which were admitted as part of the *res gestæ,* to the effect that she shot him. A criminal prosecution was immediately begun against the woman for murder and the prelim-

inary examination had. The plaintiff called the defendant's claim agent, one Whalen, as an adverse witness and attempted to show by him that he was frequently in consultation with the woman's attorney in the criminal case during the early days of the criminal prosecution. The questions were objected to, but the objections were overruled. The witness denied all such interviews except one which took place two or three weeks after the preliminary examination. It was, of course, to the interest of the defendant in the civil action that the woman should testify not only that Ebeling shot himself, but also that she should testify to any and all facts which would point in that direction. It was also to the interest of the woman that she should so testify in the criminal case. If there was in fact a getting together or consultation between the woman or her attorney and the defendant's claim agent prior to the giving of her testimony in the civil case, it seems that the fact might very well be considered in determining the credibility of her testimony in the civil case. Not perhaps that it would be of great weight, but that it would be one of the facts entirely proper to be known by the jury when considering the amount of credence which ought to be given to her testimony; in a word, a proper part of the setting of the picture. In this same connection objection was taken to a part of the argument of counsel for the plaintiff, in which he commented upon the supposed intimate relations between Whalen and the woman's attorney in the criminal case. The remarks contained personal abuse which cannot be approved. Nevertheless we do not feel that we can say that prejudice resulted therefrom.

2. On the day preceding the conclusion of the trial the plaintiff called Fred C. Ebeling, the brother of the deceased, in rebuttal of the testimony introduced by defendant tending to prove intemperate habits on the part of the deceased. Upon cross-examination the witness stated that he knew of his brother's going to West Baden, and further that "I knew he was

going to try to get help for his rupture." The case proceeded without further reference to the matter until after the verdict came in, when the defendant moved for a new trial, in part upon newly discovered evidence, and produced in support thereof the affidavit of Cora Edwards in which she alleged that to her personal knowledge the deceased had a serious and painful rupture from 1906 down to 1910, and related the facts with great detail and particularity. The affidavit was met by counter affidavits of the chauffeur of the deceased, who also had the care of the flat which deceased occupied and was familiar with his personal effects and clothing, and by the affidavits of business associates, all to the effect that they never had seen any indications of any such difficulty; also by the affidavit of a physician who gave the deceased two physical examinations, one in June, 1907, and one in January, 1909, and who swore that there was no indication at either time of any rupture. At both of such examinations the deceased was stripped of his clothing.

The motion was overruled. Upon the question of the newly discovered evidence or defense the trial court very justly said in a written opinion:

"The defense is that the insured in his application for insurance represented and warranted that he was free from any 'physical disorder, defect, deformity, impairment, or infirmity,' and that he had a rupture or hernia in the left side of his abdomen. The insured was injured and died in September, 1910. Very shortly after his death defendant's agent was on hand at the examination of Cora Edwards, seeking for grounds of defense against liability of defendant on its policy. Said Cora Edwards had lived with the insured for some months as his wife and for some years as his mistress, the time covering that when the policy of insurance in question was obtained. When this action was commenced the defendant found in the said Cora Edwards a witness willing to testify in its behalf to any fact known to her which would constitute a defense in this action, and did so testify fully on

all subjects concerning which she was interrogated.    Defendant knew that her knowledge of and acquaintance with the insured was such that she must have known the facts if he had any physical disorder, defect, deformity,. impairment, or infirmity.

"The case was at issue two terms before reached for trial, tried, and appealed to the supreme court, and tried a second time.    The question presented by this application is, Did not due diligence on the part of the defendant require it to inquire of Cora Edwards as to the facts which it knew must be known to her and which if found would constitute a defense to the action?

"The assertion of a claim under the policy is an assertion that the policy is valid and binding on the defendant.

"Defendant knows just what warranties were made in application.    Breach of them, or any, is an affirmative defense. It becomes the defendant's duty at once to use diligence to ascertain whether it has any defense because of breach of warranty.

"In *Scott v. Hobe,* 108 Wis. 239, 84 N. W. 181, a motion for a new trial was made on ground of newly discovered evidence.    It appeared that the party knew that the proposed witness had occupied a position where he would be apt to know something about the facts.    The court says: 'The affidavits further showed that neither the defendant nor his attorneys had ever interviewed Lind to see if he *knew any facts concerning the case* previous to the trial.    We think common diligence and prudence in preparing for trial would have suggested that Lind be interviewed to ascertain what knowledge he had concerning the matter.    He was in defendant's employ, was within easy access, and had seen plaintiff frequently during the employment, and it would seem quite probable that he might have had some material conversations with the plaintiff.'    Cases are cited from other states to the proposition that diligence requires a party to inquire of one who it may be reasonably presumed has knowledge as to the fact, and it seems to me that the facts of this case bring it clearly within the rule."

To this the court might have added that two juries had rejected the testimony of the woman as utterly unworthy of

belief and that there would be small prospect of her testimony making any change in the result on a third trial.

We find no other contention which seems to require detailed treatment. We have examined all the questions raised by the appellant and find no reason for reversing the judgment.

*By the Court.*—Judgment affirmed.